```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION
```

CAROLYN TELTSCHIK, §
 §
       Plaintiff, §
 §
v. §
 §  CIVIL ACTION NO. H-06-2190
JPMORGAN CHASE & CO., §
CHASE BANK USA N.A., §
JPMORGAN CHASE BANK N.A., §
 §
       Defendants. §

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants' Motion to Compel Arbitration (Docket Entry No. 9) and Plaintiff's Motion to Amend (Docket Entry No. 14). For the reasons stated below, Defendants' Motion to Compel Arbitration will be granted and Plaintiff's Motion to Amend will be denied.

### I.  Factual Background

Between March of 1993 and September of 1998 plaintiff, Carolyn Teltschik, opened five accounts ("the accounts") with defendant, Chase Bank USA, N.A. ("Chase").[1]  When Chase sent plaintiff the

---

[1] In June of 1997 Bank One Corporation acquired First USA Bank, N.A.  In October of 2002 First USA Bank, N.A. changed its name to Bank One, Delaware, N.A.  On July 1, 2004, the Corporation merged into JPMorgan Chase & Co.  On October 1, 2004, Chase Manhattan Bank USA, N.A. became successor by merger to Bank One, Delaware, N.A.  On March 1, 2005, Chase Manhattan Bank USA, N.A. changed its name to Chase Bank USA, N.A.  Affidavit of
                                                      (continued...)

five credit cards associated with each account it also sent her a copy of the "Cardmember Agreement" establishing the terms of the accounts, which plaintiff accepted by keeping and using the credit cards.  The Cardmember Agreements include provisions allowing Chase to amend the agreements.  Subsequently, Chase sent notifications to plaintiff regarding various amendments to all five accounts.  These amendments included arbitration provisions which would take effect after a stated amount of time if plaintiff did not object in writing.  Plaintiff did not object to any of these amendments within the stated time period and continued using her credit card thereafter.[2]

In July of 2005 plaintiff sent a post-dated check for $21.00 to Chase for each of her five accounts.[3]  Beneath the "memo" portion of each check plaintiff typed "If this check is presented, collected or negotiated prior to the date above, then the parties agree that the above account, and all other accounts between Maker and Payee, shall be governed by the Pre-Negotiation Terms on the reverse hereof."  The reverse of each check states:

---

[1](...continued)
Donna M. Barrett, Exhibit A ¶ 3 attached to Defendants' Motion to Compel Arbitration, Docket Entry No. 9.

[2]See Exhibit A ¶¶ 7, 10, 13, 16, 19 attached to Defendants' Motion to Compel Arbitration, Docket Entry No. 9, pp. 3-7.

[3]See Plaintiff's Reply to Defendants' Motion to Compel Arbitration, Docket Entry No. 13, pp. 8-9 ¶ 1 and Exhibits 16-20.

>All prior agreements between Drawer and Payee, and
>its predecessors, regarding such account shall
>automatically become null and void, ab initio. Such
>account shall from its inception, be governed by the
>state courts and laws of Paying Bank's situs, which
>shall be venue of all claims on the account and on
>this agreement. Payee shall, within 30 days of such
>pre-negotiation, deliver an accounting to Drawer
>from the account's inception, reversing all charges
>other than verifiable advances by Payee to, or for,
>Drawer that were requested in writing by Drawer, and
>accruing simple interest on outstanding balances at
>0.5% per month. . . . Payee shall pay $39 to Drawer
>as damages for each day that such accounting remains
>past due.[4]

Chase negotiated the five checks before the stated dates.[5]

A few months later plaintiff sent five more post-dated checks to Chase, again noting that if the checks were negotiated before the stated date Chase would agree to all terms on the back of the checks. The reverse of these checks ratified the terms on the earlier checks, set an interest rate of 18% on the $39 per day liquidated damages, and set liquidated damages in the amount of $1,000,000 on each account if Chase attempted to invoke arbitration.[6] Chase again negotiated the checks before the date stated on each check.[7]

---

[4]Id.

[5]See Exhibit 6 attached to Plaintiff's Reply to Defendants' Motion to Compel Arbitration, Docket Entry No. 13.

[6]See Plaintiff's Reply to Defendants' Motion to Compel Arbitration, Docket Entry No. 13, pp. 9-10 ¶ 2 and Exhibits 21-25.

[7]See Exhibit 26 attached to Plaintiff's Reply to Defendants'
(continued...)

Plaintiff alleges that these ten checks created a new contract between herself and defendants, voiding any prior agreements. Alleging that defendants breached this new contract plaintiff sued in state court for damages, attorney's fees, declaratory judgment to construe the contract's terms, and an accounting. Defendants removed the action to federal court based on diversity of citizenship and now request an order compelling arbitration.

## II.  Motion to Compel Arbitration

Asserting that plaintiff has agreed to arbitrate any claim arising from or relating to the accounts, defendants move the court to compel arbitration.[8]  Plaintiff urges the court to deny defendants' motion to compel arbitration, asserting that the original contracts, including the arbitration clauses, were voided by a new contract when Chase negotiated the ten checks.[9]

### A.  Standard of Review

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983).  When deciding whether parties

---

[7](...continued)
Motion to Compel Arbitration, Docket Entry No. 13.

[8]Defendants' Motion to Compel Arbitration, Docket Entry No. 9.

[9]Plaintiff's Reply to Defendants' Motion to Compel Arbitration, Docket Entry No. 13.

should be compelled to arbitrate, courts conduct a two-step inquiry. Will-Drill Resources, Inc. v. Samson Resources Co., 352 F.3d 211, 214 (5th Cir. 2003). First, the court must decide whether the parties agreed to arbitrate their dispute and, if so, whether this dispute falls within the scope of the arbitration agreement. Id. Second, the court must consider whether any federal statute or policy renders the claims nonarbitrable. Id.

**B.   Analysis**

Plaintiff does not challenge the existence of the original contract between herself and Chase. Instead, plaintiff contends that the ten post-dated checks she sent to Chase voided the previous contracts between them, including the arbitration provisions contained in the contracts. "Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole . . . ." Buckeye Check Cashing, Inc. v. Cardegna et al., 126 S. Ct. 1204, 1208 (2006) (internal citations omitted). In this case, plaintiff's challenge is the second type.

In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 87 S. Ct. 1801, 1806 (1967), the Supreme Court held that when a party challenges the arbitration clause itself, a federal court may proceed to adjudicate it. However, the Court held that the FAA's

statutory language does *not* permit the federal court to consider challenges to the contract generally. Id.[10] Rather, challenges to the contract as a whole are to be considered by an arbitrator. Buckeye Check Cashing, 126 S. Ct. at 1209. Because plaintiff alleges that the original contracts were voided by Chase's negotiation of the ten checks she mailed to Chase, this question is one for an arbitrator, not a court, if the parties' dispute is within the scope of the arbitration agreement.

Determining whether a dispute falls within the scope of an arbitration clause requires the court to characterize the arbitration clauses as "broad" or "narrow." Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). "Broad arbitration clauses . . . embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute." Id. Narrow arbitration clauses require arbitration only of disputes "arising out of" the contract, while broad clauses are those that cover all disputes that "relate to" or "are connected with" the contract. Id. See also Prima Paint, 87 S. Ct. at 1802-03 (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this

---

[10]Cf. Will-Drill Resources, Inc., 352 F.3d at 218 ("[W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.").

Agreement"). In determining whether the dispute in question falls within the scope of the arbitration agreement, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration."

The arbitration clauses in this case are substantially similar and state in part:

> Any claim, dispute or controversy by either you or us against the other . . . arising from or relating in any way to your Account, transactions on your Account, our relationship, this Agreement or any provision of this Agreement ("Claim"), including Claims regarding the applicability or validity of this arbitration clause, shall be resolved exclusively and finally by binding arbitration. . . . All Claims are subject to arbitration, no matter what they are based on or what remedy they seek. This includes Claims based on contract, . . . or any other sources of law. . . . The arbitration provision shall survive termination of your Account . . . .

The court concludes that this is a "broad" arbitration clause because it encompasses "any claim . . . arising from or relating in any way" to the agreement. Plaintiff's allegation that a new contract voided the original agreement between her and defendants falls within the express language of the arbitration clause. Because no federal statute or policy renders plaintiff's claim nonarbitrable, it is therefore a dispute for an arbitrator, not the court, to decide.[11]

---

[11]Plaintiff denies receipt of Chase's amendment notices and attacks the credibility of Chase's records (which state that such notices were mailed). Plaintiff's Reply to Defendants' Motion to Compel Arbitration, Docket Entry No. 13, p. 16. However,
(continued...)

For these reasons, defendants' motion to compel arbitration will be granted.

### III.  Motion to Amend

In her response to defendants' motion to compel arbitration, plaintiff requested leave to amend her complaint:

> If this Court were to determine that Plaintiff does not have new contracts with Defendants . . . then Plaintiff would contest the legality of the agreements to arbitrate. . . . There is presently pending in the United States District Court, for the Southern District of New York, a class action challenging the legality of these arbitration agreements as having been procured in violation of the Sherman Anti-trust Act. . . . Plaintiff agrees with the factual basis of those allegations but to avoid asserting a new federal cause of action which would make this case removable, Plaintiff asserts that the agreement to arbitrate is illegal under the Texas Free Enterprise and Anti-trust Act.  Plaintiff would ask leave to amend her pleadings to assert this illegality of the arbitration provision that Defendants seek to assert.[12]

Leave to amend shall be freely granted when justice so requires, and Federal Rule of Civil Procedure 15 evinces a bias in favor of granting leave to amend.  Goldstein v. MCI WorldCom, 340

---

[11](...continued)
plaintiff does not argue that this deficiency, if true, invalidates the arbitration clauses.  Furthermore, such a challenge, if made, would be one for arbitration because it goes to the entirety of the contract, not just the arbitration clause, since the original contracts allowing Chase to amend them are implicated in such an attack, and the amendments contained several additional terms, not just arbitration clauses.

[12] Plaintiff's Motion to Amend Pleadings, Docket Entry No. 13, pp. 11-12.

F.3d 238, 254 (5th Cir. 2003) (citing <u>Southern Constructors Group, Inc. v. Dynalectric Co.</u>, 2 F.3d 606, 612 (5th Cir. 1993)). Nevertheless, leave to amend under Rule 15 is by no means automatic. <u>Southern Constructors</u>, 2 F.3d at 612. The Supreme Court has sanctioned bad faith or dilatory motives, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, or futility of the amendment as plausible reasons for a district court to deny a party's request for leave to amend. <u>See Goldstein</u>, 340 F.3d at 254 (citing <u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962)).

The Cardmember Agreements in question are substantially similar and state that "[t]his Agreement and your Account will be governed by the law of the State of Delaware and, if applicable, federal law."[13] Choice of law provisions like these are valid under Texas law, which generally permits parties to contracts to choose the applicable state law.[14] Plaintiff's claim under the Texas Free Enterprise and Anti-Trust Act would thus be subject to dismissal

---

[13] Exhibit A-1 p. JPMC 544; Exhibit A-2 p. JPMC 468; Exhibit A-3 p. JPMC 483; Exhibit A-4 p. JPMC 522; Exhibit A-5 p. JPMC 504 attached to Defendants' Motion to Compel Arbitration, Docket Entry No. 9.

[14] <u>See, e.g.</u>, <u>DeSantis v. Wackenhut Corp.</u>, 793 S.W.2d 670 (Tex. 1990) (analyzing party autonomy in contractual choice of law matters); <u>Illinois Tool Works, Inc. v. Harris</u>, 194 S.W.3d 529 (Tex. App. -- Houston [14th Dist.] 2006) ("The parties contractually agreed to apply the law of Illinois to this contract. Texas courts will respect that choice and apply the law the parties choose.").

because the parties have selected Delaware law to govern the agreements. Because plaintiff's motion to amend her complaint is futile it will be denied.

## IV.  Conclusions and Order

For the reasons set forth above, the court concludes that the plaintiff's allegations are arbitrable and are within the scope of a valid arbitration agreement between plaintiff and defendants. Accordingly, Defendants' Motion to Compel Arbitration (Docket Entry No. 9) is **GRANTED**. Because plaintiff's proposed amendment is futile, Plaintiff's Motion to Amend (Docket Entry No. 14) is **DENIED**.

A district court may dismiss, rather than stay, an action when all of the issues raised in the district court action are submitted to arbitration. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). Because all of the issues in this action must be arbitrated, there is no reason to retain jurisdiction over the action. Accordingly, this action will be dismissed without prejudice to the parties' right to proceed to arbitration.

**SIGNED** at Houston, Texas, this 12th day of September, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE